## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Canoo, Inc., *et al.,*<br><br>          Debtors | Bankr. Case No. 25-10094 (BLS) |
| Harbinger Motors Inc.,<br><br>          Appellant<br><br>v.<br><br>Canoo, Inc.,<br><br>          Appellee | C.A. No. 25-00461 (MN) |

# APPELLANT'S REPLY BRIEF

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler (DE Bar No. 4142)
John A. Morris (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
919 N Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone:  302-652-4100
bsandler@pszjlaw.com
jmorris@pszjlaw.com
jkroop@pszjlaw.com

**SHAPIRO ARATO BACH**
Jonathan P. Bach
Daniel J. O'Neill
1140 Avenue of the Americas
New York, NY 10036
Telephone: 212-257-4880
jbach@shapiroarato.com
doneill@shapiroarato.com

*Counsel for Appellant*

TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................ 1

    Reply to Appellee's Arguments ............................................................................ 1

    Bankruptcy Code § 363(m) Does Not Moot This Appeal ........................................ 7

    Appellee's Standing Argument is Nonsense ......................................................... 11

Conclusion ............................................................................................................... 12

## TABLE OF AUTHORITIES

Page

Cases

*Chafin v. Chafin,* 568 U.S. 165, 174 (2013) ...................................................................... 8

*Chevron Corp. v. Donziger,* 833 F.3d 74, 127 (2d Cir. 2016) ............................................ 8

*In re BSA,* 137 F.4th 126, 2025 U.S. App. LEXIS 11472 (3d Cir. May 13, 2025) .... 9, 10

*In re Energy Future Holdings Corp.,* 949 F.3d 806, 821 (3d Cir. 2020) ............................ 9

*Med. Marijuana, Inc. v. Horn,* 145 S. Ct. 931, 963 (2025) ............................................... 3

*MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.),*
    2023 U.S. App. LEXIS 29477 (2d Cir. Nov. 6, 2023) ................................................. 8

*MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.),*
    2024 U.S. App. LEXIS 31791 (2d Cir. Dec. 16, 2024) ............................................... 9

*MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.),* 661
    B.R. 298 (S.D.N.Y. 2024) ............................................................................................ 9

*Myers v. Martin (In re Martin),* 91 F.3d 389, 394 (3d Cir. 1996) ................................... 5


Statutes

Bankruptcy Code § 101(10)(A) ......................................................................................... 11

Bankruptcy Code § 363(m) ...................................................................................... 1, 7, 9, 10

Bankruptcy Code § 502(a) ................................................................................................. 11

Bankruptcy Code § 704 ....................................................................................................... 3

Bankruptcy Rule 3003(c)(3) .............................................................................................. 10

Bankruptcy Rule 8014(a)(4)(A) .......................................................................................... 7

Bankruptcy Rule 8014(b)(3) ............................................................................................... 1

# ARGUMENT

## Reply to Appellee's Arguments

Perhaps in an effort to shoehorn the narrow issue presented in this appeal into the broad mootness provided by Bankruptcy Code § 363(m), Appellee misrepresents Appellant's carefully-tailored argument and characterizes this appeal as concerning the entirety of the Sale Order. It doesn't.

Appellant makes no issue of the purchase price paid, or the business justifications underlying the Trustee's decision to sell the assets, or the Trustee's good faith, or the Trustee's relatively weak negotiating position that led to his accepting the Veto Right as part of the APA. This appeal is not about any of those things. Nor is it about the bona fides of the sale process. This appeal presents the sole issue of whether the Bankruptcy Court erred in approving the Veto Right that the Trustee apparently believed he had to grant to the buyer.[1] Even the 90%-10% split of the net cash recovery from the Harbinger Litigation the Trustee negotiated and whether that was a good deal or not are irrelevant to this appeal. The Veto Right, not the apportionment of the "net cash recovery" between the Buyer and the Estates, is the problem and the sole subject of this appeal.

---

[1] Appellee includes some seven pages of its brief—half its length—as a "concise statement of the case." That exhaustive rehearsal of everything that occurred in the bankruptcy case below is neither relevant nor concise. Bankruptcy Rule 8014(b)(3) excuses an appellee from including a statement of the case unless the appellee disagrees with the appellant's statement. Appellee appears not to disagree with the relevant background Appellant included in its more concise three-page statement of the case.

As to the substance of this appeal, Appellee ponders how this Court "should go about excising [the Veto Right] without upsetting any other aspects of this complex, heavily-negotiated, integrated sale transaction for substantially all of the Debtor's assets …"[2] But whether it is difficult or even incongruous (it's neither) to excise the Veto Right from the APA is not the issue. Courts do difficult things all the time in the service of what is right. If the Veto Right improperly deprives a trustee from exercising his fiduciary duty (it does) or is otherwise unenforceable or even illegal (it is), it must be excised from an otherwise enforceable agreement—just as authorized by the savings clause in the APA:

> Section 10.11 <u>Severability</u>. The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) the Parties shall amend this Agreement with a suitable and equitable provision that shall be substituted therefor in order to carry out to the closest extent possible, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision, and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability in any one jurisdiction affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.[3]

---

[2] *Appellee's Answering Brief* [Doc 10] at 9.
[3] APA at 28, Bankr. Doc. 51-1, ROA 7 (the "**Savings Clause**").

In short, the Trustee and the Buyer fully contemplated that an unenforceable, invalid provision could be removed from the APA without doing any violence to the rest of the APA or the asset sale transaction implemented under it.

Appellee sets up several straw-man[4] arguments but never engages with Appellant's central position in this appeal—that the Veto Right is improper and that the Bankruptcy Court erred by approving it. First, Appellee argues that Appellant's acknowledgement "that the Trustee could have sold 100% of the Harbinger Litigation" means that Appellant is wrong to argue that the estate's retention of a 10% interest "renders the sale impermissible."[5] This mischaracterizes Appellant's position. Appellant isn't concerned with what the Trustee *could* have sold or felt constrained to sell. This appeal homes in on an isolated term of the APA that offends concepts concerning a non-party's ability to control the disposition of a bankruptcy estate's assets. Appellant has not accused the Trustee of falling short of dispatching his basic duties under Bankruptcy Code § 704. Rather, Appellant seeks this Court's de novo review of the Bankruptcy Court's decision approving one improper aspect of what the Trustee negotiated.

---

[4] The "straw-man" argument is one of the classic logical fallacies. An advocate mischaracterizes the opponent's argument then directs its advocacy to defeating an argument the opponent hasn't made. *See, e.g., Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 963 (2025), Kavanaugh, J. dissenting ("neither Medical Marijuana nor I actually adopt the position the Court today labels as the 'antecedent-personal-injury bar.' ... But by repeatedly criticizing that supposed rule, the Court invents and knocks down a straw man").

[5] Appellee Brief at 11.

Second, Appellee argues that Appellant's position is that "a trustee who sells a cause of action is forbidden from negotiating for the estates to retain a portion of the proceeds ..." and that that "cannot possibly be the rule."[6] True enough—that isn't the rule. Nor is it Appellant's argument in this appeal. This is:

> As the Bankruptcy Court and Appellant's counsel acknowledged, this case is very much unlike one in which the estate sells *all* the estate's interests in an asset rightly giving the buyer of that asset full decision-making discretion pertaining to that asset. As stated at the Sale Hearing, Appellant concedes that "the trustee has the power to dispose of this asset in full ... And if he did that, that would be perfectly fine. [Appellant] would not be here today." Tr. at 62:12–16. (For example, that is what happened in *MOAC Mall*: the debtor sold its assets to a buyer under Bankruptcy Code § 363 and, with them, the right of the buyer to instruct the debtor regarding to whom the debtor must assign a store lease under Bankruptcy Code § 365. *See, generally, MOAC Mall*, 598 U.S. 288.)[7]

Thus, Appellee argues from a factual position that doesn't exist, then attempts to refute an argument Appellant never made.

Third, Appellee accuses Appellant of "deliberately misconstruing the Trustee's sale of the Harbinger Litigation" ostensibly by characterizing the Buyer's motives for purchasing that asset: "This is why the Harbinger Litigation is so important to the Buyer, and why the Buyer insisted on its inclusion in the Sale in exchange for its providing over $17 million of value to the Estates."[8] Again, Appellant hasn't once "misconstrued,"

---

[6] *Id.* at 11–12.
[7] Appellant's Opening Brief [Doc 9] at 10, n.17.
[8] Appellee Brief at 12.

deliberately or not, why the Trustee would want to sell the Harbinger Litigation or why the Buyer would want to buy it. Appellant has never argued, and doesn't argue now, that it was improper for the Trustee to sell the Harbinger Litigation to the Buyer or that there was something improper about the Buyer's desire to acquire it.

Appellant's quarrel is solely with the Bankruptcy Court's error in approving the Veto Right, not the Bankruptcy Court's approval of the Trustee's business judgment, not the parties' good faith, and not the price the Buyer paid. Nor does Appellant impugn the Buyer's desire for the Veto Right. Appellant's core argument remains that the Bankruptcy Court erred by approving the Veto Right, thereby placing the Trustee in the impossible conundrum of serving two masters when a settlement of the Harbinger Litigation is reached. As the Third Circuit Court of Appeals held in *Martin,* a bankruptcy court "cannot require a trustee herself to choose between these conflicting obligations"—that is, "a conflict between her fiduciary duty to the creditor body as a whole and the alleged duty to go forward with a settlement agreement favoring one creditor but otherwise detrimental to the estate."[9] This is exactly how the Veto Right would work and this is exactly why the Bankruptcy Court erred in approving it.

---

[9] *Myers v. Martin (In re Martin),* 91 F.3d 389, 394 (3d Cir. 1996).

Fourth, Appellee mischaracterizes Appellant's argument by positing that Appellant now questions the Trustee's compliance of his duties under Bankruptcy Code § 704 by "[selling] property of the Estates in a manner compatible with the best interests of the Estates and their creditors."[10] Again, Appellant has not argued in this appeal that the Trustee somehow shirked his duties by liquidating a significant estate asset. Rather, Appellant argues that *the Bankruptcy Court erred when it granted its imprimatur on the Veto Right*—which has the *effect of curtailing* the Trustee's ability to exercise his fiduciary duties to the Estates—not that the Trustee intended to breach his duties and not that the Trustee affirmatively sought the Veto Right's inclusion in the APA in breach of those duties. Appellant has not accused the Trustee of wrongdoing.

The error was the Bankruptcy Court's. In approving the Veto Right—and *only* that provision of the APA—the Bankruptcy Court offended the Bankruptcy Code, Congressional intent, and public policy because the Veto Right *forces* the Trustee to breach his duties and enables the Buyer, who has no interest in, and owes no duty to, the Estates, to interfere with the Trustee's good-faith administration.

---

[10] Appellee Brief at 11.

## Bankruptcy Code § 363(m) Does Not Moot This Appeal

Bankruptcy Code § 363(m) provides that the "reversal or modification on appeal of an authorization ... of a sale ... of property does not affect the validity of a sale ..." But *Appellant does not seek to invalidate the sale.* Nor would this Court's reversal *solely* of the Bankruptcy Court's approval of the Veto Right reverse or materially modify the sale. For that simple reason, § 363(m) not only doesn't moot this appeal but it also doesn't apply to it.[11] Appellee correctly points out that "regardless of the outcome of this appeal, no aspect of the validity of the Sale may be disturbed," but is decidedly wrong when it argues that "this Court is effectively without the ability to grant Harbinger's requested relief."[12]

The Sale is either valid or invalid. A woman is either pregnant or not pregnant. Again, Appellant does not challenge the validity of the Sale. Appellant challenges only one part of one sentence in the APA—the Veto Right—which the Bankruptcy Court should never have approved over Appellant's narrow objection and which this Court can easily excise from the APA without affecting the validity of the Sale and without in any way divesting the Buyer of the wide array of assets it purchased, including the Harbinger Litigation. In other words, the Court can do exactly what the Trustee and the Buyer

---

[11] Appellant's citation to § 363(m) and *MOAC Mall Holdings LLC v. Transform Holdco LLC,* 598 U.S. 288 (2023), served two modest purposes: one, to establish this Court's appellate jurisdiction as required in Bankruptcy Rule 8014(a)(4)(A), something Appellee doesn't dispute; and, two, to anticipate the very mootness argument Appellee half-heartedly makes in its brief.

[12] Appellee Brief at 10.

predicted a court might do and prepared for by including the Savings Clause: *determine that one provision of the APA could be held unenforceable without invalidating anything else in the APA or the transactions it contemplates.*

That is exactly what occurred in the Sears Holdings case after the Supreme Court remanded *MOAC Mall* to the Second Circuit. Having been assured that § 363(m) did not deprive the Second Circuit of jurisdiction to hear an appeal of the inclusion of a isolated lease-assignment-designation right in the sale of assets—a clause not dissimilar from the Veto Right—the Second Circuit ruled that the appeal was *not moot* under § 363(m) and appellate courts should still consider the merits of whether the assignment of a lease was valid in light of the right to assign the lease being included as a provision in the sale.[13] The Second Circuit remanded the case to the District Court for consideration on the merits—that is, whether the asset purchase agreement should have granted the buyer a right to direct the debtor to assume a particular lease and assign it to another lessee— explaining that an "argument that claims mootness based on a challenge to the 'legal availability of a certain kind of relief [] confuses mootness with the merits.'"[14]

---

[13] *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.),* 2023 U.S. App. LEXIS 29477 (2d Cir. Nov. 6, 2023).

[14] *Id.* at *4, quoting *Chevron Corp. v. Donziger,* 833 F.3d 74, 127 (2d Cir. 2016), which quoted *Chafin v. Chafin,* 568 U.S. 165, 174 (2013).

On remand, the District Court invalidated the lease assumption and assignment implemented under the lease-assignment-designation right contained in the asset sale,[15] and the Second Circuit affirmed.[16] At no point following the Supreme Court's decision did any of the appellate courts considering that isolated term of the asset sale rule either that the appeal was moot under § 363(m) or that appellate relief could not be fashioned without invalidating the sale itself.

More generally, the Third Circuit Court of Appeals holds that an appellate court, when faced with possible statutory mootness of an appeal under § 363(m), must "see whether a remedy can be fashioned that will not affect the validity of the sale."[17] "The ultimate question," says the Third Circuit, "is whether the grant of relief [on appeal] would, in effect, 'claw back the sale,' ... so a challenger seeking to avert § 363(m)'s bar must demonstrate that the relief affects only 'collateral issues not implicating a central or integral element of a sale ...'"[18] In *Energy Future*, the Third Circuit held that § 363(m) "poses no bar" to the court's review of whether the bankruptcy court order, which effected a sale

---

[15] *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.),* 661 B.R. 298 (S.D.N.Y. 2024).

[16] *MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.),* 2024 U.S. App. LEXIS 31791 (2d Cir. Dec. 16, 2024).

[17] *In re Energy Future Holdings Corp.,* 949 F.3d 806, 821 (3d Cir. 2020). Although this decision preceded the Supreme Court decision in *MOAC Mall,* nothing about its holdings conflict in any way with that Supreme Court decision. *Energy Future Holdings* remains good law. *See, e.g., In re BSA,* 137 F.4th 126, 2025 U.S. App. LEXIS 11472 (3d Cir. May 13, 2025).

[18] *Energy Future,* 949 F.3d at 821.

of assets, deprived certain claimants of rights under Bankruptcy Rule 3003(c)(3)—and, because resolving that collateral issue on appeal would not have implicated the validity of the sale, the Third Circuit proceeded to consider the appeal's merits.[19]

Similarly, the Third Circuit held only a few weeks ago that the changes to a reorganization plan sought on appeal by certain of the debtor's insurers—including changes pertaining to a balancing of those insurer's rights with others' rights by the Settlement Trustee—"avoid triggering § 363(m)."[20] The court further held:

> None of these requested changes ... implicate the terms of the [sale]; instead, they reduce primarily to modifications ensuring that the [appellants'] interests are protected and considered in the administration of the Settlement Trust. ... the [appellants'] requested relief is sufficiently "divorced from the overall transaction" such that, if granted, it would "affect[] none of the considerations on which the purchaser relied." ... Accordingly, § 363(m) poses no barrier to our consideration of the merits of their appeal.[21]

This appeal is no different. Reversing the Bankruptcy Court's order *only* insofar as it approves the Veto Right's inclusion in the APA would do nothing to implicate the Sale's validity, would not involve a central element of the sale, and would not affect the Buyer's acquisition of the many assets it purchased nor the consideration it paid for those assets. Under even the most recent Third Circuit precedent, nothing about this appeal implicates Bankruptcy Code § 363(m).

---

[19] *Id.*

[20] *BSA,* 137 F.4th 126, 2025 U.S. App. LEXIS 11472 at *29.

[21] *Id.* at *29–30.

## Appellee's Standing Argument is Nonsense

Appellee's brief concludes with a peculiar argument pertaining to Appellant's "standing to challenge a sale order."[22] Of course, this is an appeal. Appellant's right to be heard in this Court is governed by principles of constitutional standing under the Cases and Controversies Clause of Article III of the Constitution and prudential standing under Third Circuit precedent. Appellee doesn't mention any of that. And there is no serious argument that Appellant lacks appellate standing. Even if there were, by not making such an argument Appellee has waived it.

Instead, Appellee cites cases that stand for the unremarkable proposition that non-creditors lack standing to oppose a proposed sale in the bankruptcy court, then openly acknowledges that Appellant "has filed a proof of claim in the Bankruptcy Cases." And despite pointing out that he "does not concede that [Appellant] is a creditor," Appellee fails to mention that neither he nor any other party in the Bankruptcy Cases has objected to Appellant's proof of claim. Bankruptcy Code § 502(a) provides that a "claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." Bankruptcy Code § 101(10)(A) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

---

[22] Appellee Brief at 13.

Appellant is a creditor. Appellee doesn't need to "concede" that for it to be true. Accordingly, Appellant had standing to object to the Trustee's proposed sale—standing no party challenged at the Bankruptcy Court—and has standing to be heard on appeal in this Court.

## Conclusion

For the reasons stated above and in its *Opening Brief*, Appellant respectfully urges the Court to: (a) **reverse** the Sale Order only to the extent of its approval of the Veto Right contained in Section 7.3 of the APA; (b) remand and **instruct** the Bankruptcy Court to excise the Veto Right from the APA; and (c) grant any additional appellate relief the Court deems appropriate.

June 23, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*

Bradford J. Sandler (DE Bar No. 4142)
John A. Morris (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
919 N Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone:  302-652-4100
bsandler@pszjlaw.com
jmorris@pszjlaw.com
jkroop@pszjlaw.com

-and-

**SHAPIRO ARATO BACH LLP**

Jonathan P. Bach
Daniel J. O'Neill
1140 Avenue of the Americas
New York, NY 10036
Telephone: 212-257-4880
jbach@shapiroarato.com
doneill@shapiroarato.com

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with the type-volume limitations contained in Fed. R. Bankr. P. 8015(a)(7)(B) because: (a) excluding the portions not counted under Fed. R. Bankr. P. 8015(g), the brief contains 3,023 words; and (b) the brief has been prepared using 14-point Garamond typeface (12-point for footnotes), a proportional serif typeface, for all body text (using only bold or italic font for emphasis and case names), and 14-point Arial Nova typeface, a proportional sans-serif typeface, for headings.

*/s/ Bradford J. Sandler*