IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re:<br><br>CANOO, INC., et al.,<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>) | Chapter 7<br><br>Case No. 25-10094 (BLS)<br>(Bankr. D. Del.) |
| HARBINGER MOTORS, INC.,<br><br>Appellant,<br><br>v.<br><br>JEOFFREY L. BURTCH, as Chapter 7<br>Trustee for the Bankruptcy Estate of Canoo,<br>Inc., et al.,<br><br>Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 25-461 (MN) |

## <u>MEMORANDUM OPINION</u>

Bradford J. Sandler, John A. Morris, Jordan A. Kroop, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE; Jonathan P. Back, Daniel J. O'Neill, SHAPIRO ARATO BACH, New York, NY – Attorneys for Appellant

Mark E. Felger, Simon E. Fraser, Gregory F. Fischer, Cozen & O'Connor, Wilmington, DE – Attorneys for Appellee

March 17, 2026
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**

This appeal arises in the Chapter 7 case of Canoo, Inc. and certain affiliates (together, "the Debtors") with respect to the Bankruptcy Court's April 9, 2025 Order (Bankr. D.I. 141)[1] ("the Sale Order") approving an Asset Purchase Agreement, dated as of March 4, 2025 (Bankr. D.I. 51-1) ("the APA") by and between Jeoffrey L. Burtch, as chapter 7 Trustee ("the Trustee") for the Debtors' bankruptcy estates, and WHS Energy Solutions, Inc. ("the Buyer") pursuant to sections 105, 363 and 365 of the Bankruptcy Code.    Before the Court is the appeal of Harbinger Motors Inc. ("Harbinger") of the Sale Order (D.I. 1).  As part of the purchase of the Debtors' business, Buyer sought to acquire the estates' rights in certain litigation against Harbinger ("the Harbinger Matter")[2] pending in another jurisdiction.  It is undisputed that Buyer viewed the injunctive relief sought in the Harbinger Matter as critical to the future of the Debtor's business and therefore critical to the sale contemplated in the APA.  The APA contains a provision granting the Buyer (whose primary objective in the Harbinger Matter is injunctive relief) 10% of the net cash recovery from the Harbinger Matter, whether through settlement or adjudication of the underlying litigation, with the estates to receive the balance.  Relevant to this appeal, the APA also required the mutual consent of Trustee and Buyer to any settlement of the Harbinger Matter.  Although Harbinger did not object to the sale of the 10% interest in the Net Harbinger Recovery, it did object to the approval of the mutual

---

[1]    The docket of the Chapter 7 cases, captioned *In re Canoo, Inc., et al.*, No. 25-10094 (BLS), is cited herein as "Bankr. D.I. __."

[2]    The APA defines the "Harbinger Matter" as "that certain Litigation in the United States District Court for the Central District of California, Western Division currently pending as *Canoo Technologies, Inc. vs. Harbinger Motors, Inc. et al., Case No. 2:22-cv-09309- FLA-JC* and any related Litigation based or that may be based on the facts and circumstances alleged thereunder."  (APA at 6).  As Harbinger explains, "at its essence, the Harbinger Matter alleges defendants' misappropriation of supposed trade secrets."  (D.I. 9 at 3-4, n.4). Harbinger filed a contingent unsecured claim as principal defendant in the Harbinger Matter. (*Id.*).

consent provision in connection with that sale, which it refers to as a "Veto Right." The Bankruptcy Court overruled Harbinger's objection and entered the Sale Order approving the APA. On appeal, Harbinger argues that the Bankruptcy Court erred in "approving the APA's delegation to the Buyer of the Trustee's independent fiduciary duty to settle estate-owned litigation." (D.I. 9 at 2). For the reasons set forth below, the Sale Order will be affirmed.

## I.    BACKGROUND

There is no dispute as to the relevant facts, which are summarized briefly herein to frame the issues before the Court. Prior to the Petition Date, the Debtors manufactured custom-built electric cargo vehicles for large commercial and governmental customers globally, including governmental agencies such as NASA and the Department of Defense. The Debtors had ceased all operations as of the date of its bankruptcy filing, and the Trustee is not operating the business.

In 2022, Debtor Canoo Technologies, Inc. ("Canoo Technologies") commenced the Harbinger Matter, which is contention litigation that remains pending. Debtor Canoo Technologies' complaint alleges that Harbinger was founded in 2021 by a group of Canoo Technologies' former employees, and that these employees, in violation of their contractual and statutory obligations to Canoo Technologies, took with them to Harbinger substantially all of Canoo Technologies' trade secrets and other confidential information, which they then used to compete directly against the Debtors. As well as monetary damages, the complaint also seeks injunctive relief to redress the alleged theft of trade secrets and other alleged bad acts. Injunctive relief is critical to the future of the Debtors' business, the Trustee has asserted, as it directly affects the Debtors' ability to compete in their industry. For this reason, the outcome of the Harbinger Matter with respect to the injunctive relief would be extremely important to any purchaser of the Debtors' business. (*See* Bankr. D.I. 147 ("4/9/25 Tr.") at 37)).

On January 17, 2025 ("the Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code. The Trustee subsequently determined that an urgent sale of the Debtors' assets was required to prevent a near-total loss of value. The Trustee engaged in weeks of arm's-length, good faith, negotiations with the Buyer, WHS Energy Solutions, Inc.—an affiliate of the Debtors' former chief executive, Anthony Aquila—as established by the uncontroverted evidence submitted to the Bankruptcy Court in support of the sale. (*See* 4/9/25 Tr. at 46; Bankr. D.I. 136 ¶ 6).

In the course of these negotiations, the parties agreed to a term in the APA that forms the basis of this appeal. The Buyer insisted on acquiring the estates' rights to the Harbinger Matter as part of Buyer's agreement to purchase the Debtors' assets. The Trustee was mindful of the importance of the injunctive relief to the Buyer, but, in keeping with his fiduciary duties,[3] sought a way to maximize recovery for the benefit of the estates and their creditors.[4] Whereas any injunctive relief obtained in the Harbinger Matter would be of no relevance to the Debtors, who were selling the business, any monetary recovery would benefit the estates. Accordingly, the Trustee negotiated a deal structure that would allow the estates to benefit from any monetary recovery that might be obtained, and allow the Buyer, as the new owner of the business, to realize the benefits of any injunctive relief that might be obtained. Pursuant to the terms of the APA, the Buyer would receive

---

[3]   The Bankruptcy Code provides that a trustee shall, among other things, "reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).

[4]   The Trustee asserts that, because of standing issues under the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*), the Trustee, in his capacity as the chapter 7 trustee for the Estate of Canoo Technologies, Inc., is required to remain the plaintiff in the Harbinger Matter regardless of how he and the Buyer apportioned any cash proceeds. Thus, by necessity, if a trustee is to monetize such causes of action at all, he or she must do so through such an arrangement. Harbinger's briefs do not dispute this contention.

3

ten percent (10%) of any "Net Harbinger Recovery," with the estates to receive the balance. The APA defines the Net Harbinger Recovery as:

> (i) the sum of all amounts paid to the Seller, Debtors or Estates, or one or more of their respective designees, under the Harbinger Matter, by or on behalf of one or more of the defendants party thereto, or any other Person that may become party to the Harbinger Matter as a defendant thereunder, as a direct result of or otherwise in settlement of the Harbinger Matter, *less* (ii) the sum of all legal and professional fees and costs paid to contingency counsel in pursuing, prosecuting and/or settling such Harbinger Matter.

(APA at 6.)  The APA further provides:

> Harbinger Matter.  From and after the Closing, Buyer agrees to provide[] commercially reasonabl[e] consultation and assistance to Seller and its counsel in the prosecution of the Harbinger Matter at Buyer's expense.  ***Any settlement of the Harbinger Matter shall require the mutual consent of Seller and Buyer.***  As contemplated by Section 2.1(k), Seller shall pay to Buyer 10% of any Net Harbinger Recovery.

(APA § 7.3 (emphasis added)).

On March 4, 2025, the Trustee filed a motion (Bankr. D.I. 51) ("the Sale Motion") seeking an order authorizing the Debtors' entry into the APA (Bankr. D.I. 51-1).  On March 28, 2025, Harbinger filed its Limited Objection (Bankr. D.I. 113) to the Sale Motion, seeking, among other things, elimination of the second sentence of Section 7.3 of the APA, which it referred to in the objection as "Consent Rights" with respect to any settlement of the Harbinger Matter.  (*See* Bankr. D.I. 113 at 2).  Harbinger argued, *inter alia*, that approval of the Consent Rights "cedes the Trustee's control over settlement negotiations—and the disposition of an estate asset—away from the Trustee to Mr. Aquila, who owes no fiduciary duties to these estates or any of their constituents." (*Id*. at 2–3).

On April 9, 2025, the Bankruptcy Court held a hearing on the whether to approve the APA ("the Sale Hearing").  The Trustee conceded that, by virtue of the Consent Rights set forth in the

4

second sentence of Section 7.3, the Trustee would not be able to reach a settlement of the Harbinger Matter without the consent of Buyer's principal, Mr. Aquila, whose interests in settlement may plausibly conflict with that of the creditors. (*See* 4/9/25 Tr. at 37:1–8; Bankr. D.I. 113 at 2–3; D.I. 9 at 7 n.10). At the Sale Hearing, Harbinger confirmed that it did not object to the sale of the 10% interest in the Net Harbinger Recovery but solely to the granting of the Consent Rights to the Buyer in connection with that sale. (*See* 4/9/25 Tr. at 35:4–16). The Bankruptcy Court overruled the objection and entered the Sale Order.

The Sale Order: approved the APA with the Buyer and all transactions contemplated therein; authorized the Trustee to enter into the APA and carry out the terms thereof; approved the sale of the Debtors' subject assets (as defined in the APA, "the Purchased Assets") to the Buyer pursuant to the APA; and found that the Buyer's consideration was fair and reasonable and that the Sale, therefore, is not subject to avoidance under section 363(n) of the Bankruptcy Code. (*See* Sale Order ¶¶ 3, 4, 7). The Sale Order also provided:

> Buyer shall be deemed a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Purchased Assets shall not affect the validity of the sale of the Purchased Assets to Buyer.

(*Id.* ¶ 6). At the Sale Hearing, the Bankruptcy Court further ruled that the Sale Order would be effective immediately upon entry, notwithstanding Federal Rule of Bankruptcy Procedure 6004(h). (*See* 4/9/25 Tr. at 79 ("Based upon the record before me I am satisfied that cause has been demonstrated for a waiver of the Rule 6004 stay and I would admonish the Trustee to go forth and close."). Neither Harbinger nor any other party sought a stay of the Sale Order's effectiveness. On April 11, 2025, the Trustee and the Buyer closed the Sale of the Purchased Assets pursuant to the APA and the Sale Order. (*See* Bankr. D.I. 155).

On April 15, 2025, Harbinger filed a timely notice of appeal. (D.I. 1). The appeal is fully briefed. (D.I. 9, 10, 15).[5] No party requested oral argument.

## II.   **JURISDICTION AND APPLICABLE STANDARDS**[6]

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Bankruptcy Court's Sale Order authorizing sale of the Debtors' property is a final, appealable order. *In re Culp,* 550 B.R. 683, 691 (D. Del. 2015).

Because the operative facts and the relevant provision of the APA are not in dispute, the issue of whether the Bankruptcy Court erred in approving a sale of assets subject to Section 7.3 of the APA is a question of law this Court reviews *de novo.*

The legal standard applicable to Trustee's motion to sell property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, is the "business judgment test, under which a bankruptcy court will authorize debtor-initiated actions if the debtor shows that 'a sound business purpose justifies' such actions." *City of Rockford v. Mallinckrodt PLC*

---

[5]   Additionally the Buyer filed a motion for leave to participate as amicus curiae (D.I. 11) ("the Motion for Leave") to which Harbinger objected (D.I. 14) on the basis that the Buyer "was a central party in the Sale Hearing below and a principal party beneficiary of the Sale Order," and "[a]s such, it is too personally interested in this appeal to be considered an amicus." Additionally, Harbinger argued, the Buyer's proposed amicus brief (D.I. 11-1) does not offer any arguments not already contained in the appellees' brief. (D.I. 14 at 1). The Court agrees with Harbinger. An amicus curiae is "an 'impartial friend' of the court who assists the court by providing information . . . aids the court in resolving doubtful issues of law . . . [and] is not 'an adversary party in interest in the litigation.'" *In re Edison Mission Energy,* 610 B.R. 871, 878 (Bankr. N.D. Ill. 2020) (citing *United States v. Michigan,* 940 F.2d 143, 165 (6th Cir. 1991)). As such, although it may have been appropriate for Buyer to seek leave to participate as an intervenor, it is not appropriate for Buyer to participate as amicus curiae.

[6]   It appears undisputed that Harbinger has filed a proof of claim against the Debtors for sanctions, pursuant to the Defend Trade Secrets Act and the California Uniform Trade Secrets Act, on the basis that the litigation was filed in bad faith. For the avoidance of doubt, the Trustee's argument (D.I. 10 at 13-14) that Harbinger lacks standing to appeal the Sale Order because the Trustee "does not concede that Harbinger is a creditor," is rejected.

*(In re Mallinckrodt PLC)*, 2022 WL 906458, \*6 (D. Del. March 28, 2022) (quoting *Culp v. Stanziale (In re Culp)*, 545 B.R. 827, 844 (D. Del. 2016)).  The test considers the benefit to the debtor's estate and, "[i]f a valid business justification exists, then a strong presumption follows that the agreement was negotiated in good faith and is in the best interests of the estate."  *Culp*, 545 B.R. at 844.  "Indeed, '[w]here the trustee articulates a reasonable basis for the business decision, courts will generally not entertain objections.'" *In re Mallinckrodt PLC*, 2022 WL 906458, \*6 (quoting *In re Culp*, 545 B.R. at 844).  "As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."  *Computer Sales Int'l, Inc. v. Federal Mogul (In re Federal Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003).

### III.   ANALYSIS

#### A.   Section 363(m) of the Bankruptcy Code Does Not Bar Consideration of the Appeal

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

As noted, the Sale Order deemed the Buyer "a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code."  (Sale Order ¶ 6).  The sale has not been stayed pending appeal.  As the Third Circuit has explained, "[o]ur task, then, after ascertaining that the appeal is taken from an authorization of a sale, that the purchase was made in good faith, and that the sale was not stayed, is to 'see whether a remedy can be fashioned that will not affect the validity of the sale.'" *In re Energy Future Holdings Corp.*, 949 F.3d 806, 821 (3d Cir. 2020) (quoting *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 498-99 (3d Cir.

1998).  Harbinger asserts that "[r]eversing the Bankruptcy Court's order *only* insofar as it approves the Veto Right's inclusion in the APA would do nothing to implicate the Sale's validity, would not involve a central element of the sale, and would not affect the Buyer's acquisition of the many assets it purchased nor the consideration it paid for those assets."  (D.I. 15 at 10).  Conversely, the Trustee argues that "regardless of the outcome of this appeal, no aspect of the validity of the Sale may be disturbed," so "this Court is effectively without the ability to grant Harbinger's requested relief." (D.I. 10).

The Court disagrees to some extent with both parties.  The Third Circuit "interpret[s] subsection 363(m) more broadly and will review any sale-challenge that doesn't 'affect the validity of the sale.'"  *In re ICL Holding Co.*, 802 F.3d 547, 554 (3d Cir. 2015) (quoting *Cinicola v. Scharffenberger*, 248 F.3d 110, 128 (3d Cir. 2001)).  "Stated another way, so long as we can 'grant effective relief,' § 363(m) doesn't bar appellate review."  *Id*. (quoting *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 651 (3d Cir. 1997).  Section 363(m) "does not moot every term that might be included in a sale agreement, even if each is technically integral to that transaction."  *Id*. (internal quotation marks omitted).  "[W]hile § 363 aims to make sales of estate property final and inject predictability into the sale process, we don't think it does so at all costs and certainly not for non-purchasers."  *Id*.

Buyer has purchased the Debtors' business on the condition that Buyer may pursue whatever injunctive relief may be obtained through the Harbinger Matter.  The record reflects that Buyer's right to pursue injunctive relief was integral to the transaction as a whole as a path forward for the Debtors' business.  (4/9/25 Tr. at 37 (Trustee: "If the injunction is successful, then the value of the debtors' business goes up dramatically.").  The Court cannot agree with Harbinger that that "[r]eversing the Bankruptcy Court's order *only* insofar as it approves the Veto Right[] . . . would not involve a central element of the sale, and would not affect the Buyer's acquisition of the many

assets it purchased." (D.I. 15 at 10). Without the mutual consent provision, the Trustee could conceivably settle the Harbinger Litigation for monetary damages alone and leave the Buyer without the injunctive relief that it bargained for and paid a large sum to obtain. So although striking the mutual consent provision of the APA, to the extent it is determined to be unenforceable, may not technically "claw back the sale," *In re ICL Holding,* 802 F.3d at 554, it would deprive the Buyer of the certainty that it may at least seek to obtain whatever injunctive relief is available through settlement or adjudication of the Harbinger Matter.

That said, the Court also disagrees with the Trustee that it is "effectively without the ability" to grant relief, insomuch as it seems at least feasible that the APA could be modified in some way to accommodate an adverse ruling on appeal with respect to the consent right. For example, the Sale Order could be remanded for a consideration of whether it is appropriate to amend the APA to provide that, in exchange for $17 million, the Debtors have sold 100% of the Harbinger Matter to Buyer, with an agreement for the Trustee to cooperate insomuch as the Defend Trade Secrets Act requires. All of this is just to say that, as to this appeal of a single sentence of the APA, it may be possible to fashion relief that would not affect the validity of the sale. Accordingly, section 363(m) does not bar the Court's review of the appeal. *See In re ICL Holding,* 802 F.3d at 554.

**B.       The Bankruptcy Court Properly Approved Section 7.3 of the APA**

Harbinger argues that the practical effect of section 7.3 of the APA is untenable: "Approving the Veto Right all but guaranteed further litigation if and when the Trustee proposes a settlement the Buyer—a wholly owned affiliate of an indignant Mr. Aquila, bent on vindication against his competitor—finds unacceptable." (D.I. 9 at 16). That said, the parties agree on the legal effect of Section 7.3 of the APA: it requires the Buyer to consent to any potential settlement of the Harbinger Matter regardless of whether the Trustee believes the settlement is in the best interests of the estate. The parties only disagree on the legal permissibility of granting the Buyer this right. Harbinger

argues that "[b]y overruling Appellant's objection to the inclusion of the Veto Right in Section 7.3 in the APA . . ., the Bankruptcy Court sanctioned the Trustee's relinquishing, to a non-fiduciary third party governed purely by its own self-interest, the Trustee's fiduciary duty to liquidate estate assets and make discretionary decisions in the best interests of the estate and its creditors." (D.I. 9 at 7).  Such a delegation, Harbinger asserts, is a violation of the chapter 7 trustee's statutory duties under section 704 of the Bankruptcy Code, which include "the duty to monetize estate assets for the maximum benefit of creditors" and "to independently determine whether to pursue or settle a claim belonging to the estate without deference to any one creditor or other party-in-interest." (*See id*. at 7-8 (citing *In re Thompson,* 965 F.2d 1136, 1145 (1st Cir. 1992)).  The cases cited by Harbinger, however, are non-bankruptcy cases involving litigation funders, or cases which simply stand for the proposition that a trustee should not delegate decision-making authority over the core functions of case administration.  (*See* D.I. 9 at 7-16).

According to the Trustee, Harbinger's argument is unsupported, takes section 7.3 of the APA out of context, and ignores that the provision is but one term in an overall bargain the Trustee carefully negotiated in order to monetize the assets for the benefit of the estates and maximize recovery for creditors.  (*See* D.I. 10 at 12-13).  As Harbinger agrees that the Trustee could have sold 100% of the Harbinger Litigation to Buyer, the Trustee challenges Harbinger's position that the Trustee's negotiation to retain a portion of any monetary damages that may be obtained through settlement or awarded in the litigation—indisputably a superior result for the estates—was impermissible.  (*See id.* at 11).

The Court agrees with the Trustee.  The Debtors' rights and interests in the Harbinger Matter are property of the estate.  The Trustee may sell such property outside of the normal course of business so long as the Trustee can demonstrate that "a sound business purpose justifies" such a sale and obtains Bankruptcy Court approval.  *In re Mallinckrodt,* 2022 WL 906458, *6.  There is no

10

dispute here that the Trustee's sale of the Debtors' litigation rights in the Harbinger Matter, the future success of which is entirely unknown, for the known sum of $17 million, was a sound exercise of his business judgment. (*See* D.I. 15 at 1). Only the second sentence of section 7.3 of the APA, requiring mutual consent to a settlement, is challenged. The Court agrees that Harbinger views this provision of the APA in isolation, characterizing it as Trustee's impermissible sale or delegation of his duty to monetize an estate asset. Harbinger's argument ignores that the Trustee has already monetized the asset in a way that satisfies a sound business purpose. Needless to say, there is no guarantee of a settlement of the Harbinger Matter, just as there is no guarantee of any success in the underlying litigation. The Trustee has reduced the unknown value of these litigation rights to a known sum, and, in approving the APA, the Bankruptcy Court has determined that the Trustee demonstrated a sound business justification for doing so based on that known sum, separate and apart from any additional monetary recovery that may (or may not) be obtained. Any such additional monetary recovery by the estates, by virtue of a settlement or adjudication of the Harbinger Matter, can only be viewed as strengthening what the parties already agree to be a sound business purpose.

The Trustee demonstrated that a sound business purpose justifies the Debtors' sale of its litigation rights for a known sum, realizing over $17 million for the estates, plus a portion of any monetary recovery in any settlement to which the Trustee and the Buyer mutually consent or as otherwise may be awarded in the underlying litigation. In doing so, the Trustee has satisfied his fiduciary duty to monetize estate assets and maximize recovery in the best interests of the estate and its creditors. Any additional monetary recovery that may be obtained by the estates, through additional provisions of the APA governing a possible, uncertain settlement, was not necessary to demonstrate that the sale was a sound exercise of the Trustee's business judgment. Accordingly, the Bankruptcy Court did not err in approving the APA and entering the Sale Order.

11

**IV.    <u>CONCLUSION</u>**

The Sale Order approving the APA will be affirmed.  An appropriate order will be entered.